IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT BAKER,                    )
                                  )     2:05-cv-589-GEB-KJM
                    Plaintiff,    )
                                  )
        v.                        )     ORDER
                                  )
STATE OF CALIFORNIA, et al.,      )
                                  )
                    Defendants,   )
                                  )
        v.                        )
                                  )
NARCISO MORALES,                  )
                                  )
                Cross-Defendant.  )
_____  )

        Plaintiff moves to strike the testimony of experts that
Defendants characterize as non-retained.  Defendants Delwin Brown,
Linda Bridges, Daniel Torres, and Robert Dutra (collectively referred
to as "Moving Defendants") move for summary judgment on all claims
asserted against them.  In addition, Defendants Roderick Hickman,
Walter Allen, and Tim Mahoney (collectively referred to as "Supervisor
Defendants") move for summary judgment on all claims asserted against
them.  These motions were argued on December 11, 2006.

                            BACKGROUND

        Plaintiff and Counter-Defendant Narciso Morales were wards
at the N.A. Chaderjian facility ("Chad") of the California Youth

1

Authority ("CYA").  They were asked to sign a Staff and Offender Interaction Contract ("Contract") as a prerequisite for integrating into normal programs at Chad.  (Supervisor Defs.' Statement of Undisputed Facts ("Sup. Defs.' SUF") ¶¶ 1, 4.)  The Contract sought assurances from wards that "they would refrain from engaging in violent behavior [so] they could be integrated with other wards who may be of different ethnicity or gang affiliation."  (Id. ¶ 3.)  Both refused to sign the Contract and were brought to the Senior Youth Correctional Counselor's office ("SYCC Office") in Pajaro Hall to discuss the Contract.  (Moving Defs.' Statement of Undisputed Facts ("Mov. Defs.' SUF") ¶ 3.)  While in the SYCC Office an altercation began between Defendant Brown and Morales.  (Id. ¶ 6.)  At the same time an altercation began between Defendant Marcel Berry and Plaintiff.  (Id. ¶ 7.)  Both the Brown-Morales and the Berry-Plaintiff altercations eventually moved outside of the SYCC Office where the altercations were captured on a security video.  (Id. ¶ 8.)

At the time of Plaintiff's altercation with Berry, Defendant Mahoney was the Assistant Superintendent at Chad, Defendant Allen was the Director for the Department of Youth Authority, and Defendant Hickman was the Secretary of the Youth and Adult Correctional Agency. (Sup. Defs.' SUF ¶¶ 9, 16, 19.)  Mahoney heard about the altercation over the radio transmission and responded to the scene to assess the situation.  (Id. ¶ 10.)  Mahoney reported the event to Mark Gant, Chief of the Internal Affairs Division for the Youth Authority.  (Id. ¶ 15.)  Mr. Gant informed Allen about the altercation.  (Id. ¶ 17.) The incident was then reported to Hickman.  (Id. ¶ 20.)

Defendants Brown and Bridges, Senior Youth Correctional Counselors ("SYCCs"), and Defendants Dutra and Torres, Youth

Correctional Counselors, were all on duty at the time of the altercations. (Mov. Defs.' SUF ¶¶ 2, 14, 21, 31.) Prior to the altercations, Brown was seated at his desk in the SYCC Office where Plaintiff and Morales were present to discuss the Contract. (Pl.'s RMSUF ¶¶ 3-4.) Bridges was on duty in another hall at Chad overseeing wards when she heard the unit alarm indicating an emergency in Pajaro Hall. (<u>Id.</u> ¶ 21.) Bridges responded to the alarm and upon entry into Pajaro Hall she saw Brown engaged in an altercation with Morales and saw Berry standing above Plaintiff. (<u>Id.</u> ¶¶ 23, 26.) Dutra arrived on the scene after Bridges, following which he witnessed the Brown-Morales altercation. (<u>Id.</u> ¶¶ 31, 32.) Torres was in the control tower above the SYCC Office at the time of the altercations. (<u>Id.</u> ¶ 14.) Torres witnessed both the Brown-Morales and the Berry-Plaintiff altercations once they moved outside the SYCC Office. (<u>Id.</u> ¶ 16.)

DISCUSSION

<u>I.  Motion to Strike</u>

Plaintiff moves "for an order . . . strik[ing] the testimony of [D]efendants' . . . 'non-retained' experts (specifically Bob Gallano, Donald Nickerson and 'One or more medical personnel')." (Mot. to Strike at 2.) Defendants' opposition notes, however, that "none of the designated non-retained experts has as yet testified" and suggests that the "designated non-retained experts" may not ultimately be called to testify at trial. (Opp'n to Mot. to Strike at 1 n.1, 3.) Since it is unclear at this time whether any of these characterized non-retained experts will be designated in a pretrial statement, Plaintiff's motion to strike their testimony is not yet ripe for judicial determination and is therefore denied without prejudice.

II.  Motion for Summary Judgment

    A.  Standard

       "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hart v. Parks, 450 F.3d 1059, 1065 n.4 (9th Cir. 2006).

> [W]hen the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. Thus, summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial.

Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (internal citations and quotation marks omitted).  "To defeat summary judgment the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law."  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (internal citations and quotation marks omitted).

    B.  Supervisor Defendants

       i.  Statutory Immunity

    Supervisor Defendants assert they are immune from all liability in this lawsuit under California Government Code section 820.8.  (Sup. Defs.' Mot. at 14.)  This section states "a public

employee is not liable for an injury caused by the act or omission of another person." Plaintiff rejoins since all claims are asserted against the Supervisor Defendants on a direct theory of liability, this section is inapplicable. (Pl.'s Sup. Opp'n at 13.) Since Plaintiff's claims assert direct liability against Supervisor Defendants, their argument is unavailing.

### ii.  Undisputed Claims Against Hickman and Allen

Supervisor Defendants Hickman and Allen seek summary judgment on Plaintiff's claims of fraud by concealment, conspiracy, coercion under California Civil Code section 52.1, and failure to summon medical care under California Government Code section 845.6. These Defendants argue Plaintiff has no evidence from which it could be reasonably inferred that they could be liable for these claims. (Sup. Defs.' Mot. for Partial Summ. J. ("Sup. Defs.' Mot.") at 8, 9, 12-14). Plaintiff's opposition brief does not respond to these contentions. (Pl.'s Opp'n to Sup. Defs.' Mot. for Partial Summ. J. "Pl.'s Sup. Opp'n" at 9-12.) Therefore, this portion of Hickman and Allen's motion is granted.

### iii.  Negligent Supervision and Training[1]

#### a.  Supervision

Supervisor Defendants also seek summary judgment on Plaintiff's negligent supervision claims, arguing there is no evidence that they "had any knowledge of any alleged pattern of abuse of wards." (Sup.' Defs.' Mot. at 7.) Plaintiff rejoins that these Defendants negligently supervised the employees at Chad "because they failed to take any measures to correct the 'culture of violence' and

---

[1]   Plaintiff's complaint does not specify whether this claim is under federal or state law, so both will be considered.

the 'code of silence' which showed a callous disregard for others."
(Pl.'s Sup. Opp'n at 8.)

      A supervisor is liable under federal law "for his own
culpable action or inaction in the training, supervision, or control
of his subordinates; for his acquiescence in the constitutional
deprivations of which the complaint is made; or for conduct that
showed a reckless or callous indifference to the rights of others."
<u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)
(internal quotations omitted).  A supervisor is liable under
California law only if he has knowledge that the individual allegedly
not supervised properly "was a person who could not be trusted to act
properly without being supervised."  <u>Noble v. Sears, Roebuck & Co.</u>, 33
Cal. App. 3d 654, 664 (1973).

      Plaintiff fails to provide any evidence that Mahoney knew or
should have known of the alleged "code of silence" or "culture of
violence" prior to Plaintiff's altercation with Berry.  Nor has
Plaintiff presented evidence that Mahoney had knowledge that any of
the individuals involved in Plaintiff's allegations could not be
trusted to act properly.  Therefore, Mahoney is granted summary
judgment on Plaintiff's negligent supervision claim under both federal
and California law.

      Plaintiff also fails to provide evidence that Allen knew or
should have known about the "code of silence" or "culture of violence"
allegedly existing at Chad.  Nor has Plaintiff presented evidence that
Allen knew or should have known the individuals involved in the
present incident could not be trusted to act properly.  Therefore,
Allen is granted summary judgment on Plaintiff's negligent supervision
claim under both federal and California law.

Plaintiff presents evidence that Hickman had knowledge that a "culture of violence" and a "code of silence" existed at CYA facilities, from which a reasonable inference could be drawn that Hickman knew that individuals working at CYA facilities needed closer supervision. (Pl.'s Statement of Disputed Facts ("Pl.'s SDF") ¶ 42.) Hickman presents uncontroverted evidence that he was appointed Secretary of the Youth and Adult Correctional Agency two months before the Berry-Plaintiff altercation. (Sup. Defs.' SUF ¶ 19.) Hickman argues since he was hired merely two months before the incident, he had insufficient time to implement changes in policy. (Sup. Defs.' Mot. at 7.) Plaintiff rejoins that Hickman's failure to take any action to eliminate the "code of silence" and "culture of violence" at CYA facilities makes him liable for the incident. (Pl.'s Sup. Opp'n at 8.)

Whether Hickman held his position as Secretary long enough to initiate changes at CYA facilities presents a disputed issue of material fact. That disputed factual issue defeats Hickman's motion under state law. However, Hickman argues that his qualified immunity defense shields him from liability for Plaintiff's federal claim that he should have instituted systemic changes at CYA facilities in the two months he held office. (Sup. Defs.' Mot. at 11.) The qualified immunity analysis "turn[s] on whether [Hickman] violated [Plaintiff's] clearly established constitutional or statutory right of which a reasonable person would have known" in Hickman's situation. Jensen v. Lane County, 222 F.3d 570, 576 (9th Cir. 2000). A reasonable person in Hickman's situation would not have known that he was required to institute systemic changes within two months of assuming the Secretary position at CYA. Therefore, Hickman is entitled to qualified immunity

1 and is granted summary judgment on Plaintiff's federal negligent

2 supervision claim.

3                    b.  Training

4            Supervisor Defendants argue they are entitled to summary

5 judgment on Plaintiff's failure to train claims since staff at Chad is

6 "constantly attending training on all topics, including use of force."

7 (Sup.' Defs.' Mot. at 7.)  Plaintiff counters that "Defendants are

8 liable for negligent training because they failed to provide self-

9 defense training to staff."  (Pl.'s Sup. Opp'n at 7.)

10           "A cause of action for negligent training requires a showing

11 that [Defendants] negligently trained [an individual] and as a result

12 of such negligent instruction [that individual] caused injury or

13 damage to another."  State Farm Fire & Casualty Co. v. Keenan, 171

14 Cal. App. 3d 1, 23 (1985).  Supervisors are liable under federal law

15 "for [their] own culpable action or inaction in the training [of]

16 subordinates; for [their] acquiescence in the constitutional

17 deprivations of which the complaint is made; or for conduct that

18 showed a reckless or callous indifference to the rights of others."

19 Larez, 946 F.2d at 646 (internal quotations omitted).

20           Plaintiff submits evidence that no self-defense training was

21 offered to Chad employees, but presents no evidence that either

22 Mahoney or Hickman had a duty to implement self-defense training.

23 Therefore, Mahoney and Hickman's motion for summary judgment on

24 Plaintiff's claims that they failed to provide training under both

25 federal and California law is granted.

26           Plaintiff presents evidence that Allen, as the Director of

27 CYA, was "responsible for any and all training."  (Pl.'s Resp. to Sup.

28 Defs.' SUF ("Pl.'s RSSUF") ¶ 21.)  Allen had been appointed to the

Director position one month prior to the altercation.  (Sup. Defs.'
SUF ¶ 16.)  Allen argues he had insufficient time in that position to
implement changes in CYA policy.  (Sup. Defs.' Mot. at 7.)  Whether
Allen held this position long enough to implement changes is a factual
dispute.  That factual dispute defeats his motion for summary judgment
on Plaintiff's negligent training claim under California law.
However, Allen asserts he is shielded from liability on Plaintiff's
federal negligent training claim based on qualified immunity.  (Sup.
Defs.' Mot. at 11.)

A reasonable person in Allen's situation would not have
known that he was required to address the "code of silence" and
"culture of violence" within one month of assuming the Director
position at CYA.  Therefore, Allen is entitled to qualified immunity
and is granted summary judgment on Plaintiff's federal negligent
training claim.

iv.  Fraud by Concealment

Mahoney seeks summary judgment on Plaintiff's fraud claim
arguing there is no evidence he attempted to conceal any of the events
associated with the Berry-Plaintiff altercation.  (Sup. Defs.' Mot.
at 8.)  Plaintiff rejoins that Mahoney knowingly gave the District
Attorney false information while concealing exculpatory evidence
regarding the Berry-Plaintiff altercation which resulted in Plaintiff
being charged with a crime and held at the county jail.  (Pl.'s Sup.
Opp'n at 9.)

Fraud by concealment requires "1) suppression of a material
fact; 2) by one who is bound to disclose it, or who gives information
of other facts which are likely to mislead for want of communication
of that fact; 3) with intent to deceive a person unaware of the

concealed fact and who would not have acted had he known of the fact."
<u>Melanson v. United Air Lines, Inc.</u>, 931 F.2d 558, 563 (9th Cir. 1991)
(citing Cal. Civ. Code §§ 1709, 1710).  Plaintiff argues that by
concealing the security videotape of the altercation from the District
attorney, Mahoney's actions satisfy the elements of fraud under
California law.  (Pl.'s Sup. Opp'n at 9.)  But as Plaintiff's counsel
conceded at oral argument, Plaintiff has provided no supporting
authority for this novel fraud claim by a Plaintiff who was not the
subject of the alleged fraud.  Since Plaintiff has neither presented
evidence Mahoney concealed information from Plaintiff, nor shown that
Plaintiff's fraud theory of liability based on concealment of a
material fact from a third party is viable under California law,
Mahoney's motion on this claim is granted.

> v.  Conspiracy

Mahoney also seeks summary judgment on Plaintiff's
conspiracy claim, arguing there is no evidence he was involved in an
agreement to violate Plaintiff's rights.  (Sup. Defs.' Mot. at 9.)
Plaintiff counters that Mahoney and Brown conspired to force Plaintiff
to sign the Contract and the assault was a direct result of this
conspiracy. (Pl.'s Sup. Opp'n at 10.)  Plaintiff further contends the
"code of silence" at CYA facilities is evidence of a conspiracy to
cover up all incidents of excessive force.  (<u>Id.</u> at 11.)

> The essentials to the existence of a conspiracy
> are defined as follows: concert of action between
> the conspirators to accomplish the purpose of the
> conspiracy, the taking of illegal actions in
> furtherance of a common scheme or design to
> achieve the unlawful purpose of the conspiracy,
> and knowledge on the part of the alleged
> conspirators of the conspiracy and its unlawful
> purpose.

<u>Holder v. Home Sav. & Loan Ass'n of Los Angeles</u>, 267 Cal. App. 2d 91, 108 (1968).  "[A] conspiracy may be inferred from circumstances, and . . . need not be the result of an express agreement but may rest upon tacit assent and acquiescence."  <u>Id.</u>  However, "bare legal conclusions . . . [i]nferences, generalities, [and] presumptions, are insufficient."  <u>117 Sales Corp. v. Olsen</u>, 80 Cal. App. 3d 645, 650 (1978).

a.  <u>Conspiracy to Commit Assault & Battery</u>

Mahoney argues Plaintiff presents no evidence from which a reasonable inference could be drawn that an agreement existed between Mahoney and Brown prior to the incident either to force Plaintiff to sign the Contract or to assault Plaintiff.  (Sup. Defs.' Mot. at 9.)  Plaintiff rejoins that Mahoney "took affirmative action by conspiring to have [Plaintiff] sign a 'gang' contract against his will."  (Pl.'s Sup. Opp'n at 11.)  However, Plaintiff neither presents evidence Mahoney entered into an agreement with Brown nor that Mahoney had knowledge Plaintiff would be assaulted before it happened.  Therefore, Mahoney's motion on Plaintiff's conspiracy to commit an assault and battery claim is granted.

b.  <u>Conspiracy to Cover up</u>

Mahoney argues he is entitled to summary judgment on Plaintiff's conspiracy to cover up claim because he reported the incident to the appropriate person within the chain of command at the CYA.  (Sup. Defs.' Mot. at 9.)  Plaintiff rejoins Mahoney is liable because he "supplied misleading information to the D.A. to punish [Plaintiff]."  (Pl.'s Sup. Opp'n at 11.)  It is undisputed that Mahoney ordered the videotape of the incident not be shown without his

consent.  (Pl.'s SDF ¶ 50.)[2]  The inference could be drawn that a
tacit agreement existed to cover up the incident.  Therefore,
Mahoney's motion for summary judgment on Plaintiff's cover-up
conspiracy claim is denied.

> ## vi.  Claim Under 42 U.S.C. § 1983 for Constitutional and
> ## Civil Rights Violations

Supervisor Defendants move for summary judgment on
Plaintiff's claim under 42 U.S.C. § 1983 ("section 1983") for
violations of his constitutional and civil rights asserting Plaintiff
has presented no evidence that they violated his rights.  (Sup. Defs.'
Mot. at 9-10.)  Plaintiff does not specify in his opposition brief
which constitutional rights Supervisor Defendants allegedly violated.
However, at oral argument Plaintiff specified that Supervisor
Defendants allegedly violated his Fourth, Eighth, and Fourteenth
Amendment rights.

> ### a.  Fourth Amendment Claim

Plaintiff's counsel explained at the hearing that
Plaintiff's section 1983 claim for an alleged Fourth Amendment
violation is based on a custom and practice of excessive force and the
"code of silence" at CYA facilities.  Supervisor Defendants seek
summary judgment on this claim, arguing they did not personally
participate in the altercation, were not present at the scene when it
occurred, and did not condone the alleged "code of silence."  (Sup.
Defs.' SUF ¶¶ 10, 17, 20.)  Plaintiff counters that Defendants are
liable for Berry's alleged use of excessive force because of their

---

[2]    Although the Supervisor Defendants deny this fact in their
response to Plaintiff's Statement of Disputed Facts, (Sup. Defs.' Resp.
to Pl.'s SDF ¶ 50), Defendants' counsel conceded this fact at oral
argument.

acquiescence in a "culture of violence" and "code of silence" existing at Chad. (Pl.'s Sup. Opp'n at 11.) Essentially, Plaintiff's Fourth Amendment claim alleges that Berry used excessive force in assaulting and battering Plaintiff, and that each Supervisor Defendant is liable for that excessive force since they failed to eradicate the "culture of violence" and "code of silence" at Chad.

"[A] supervisor is liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (internal quotation marks omitted).

Since nothing in the record indicates that either Mahoney or Allen participated in or directed Berry's use of excessive force or that they were aware of the "culture of violence" or "code of silence" prior to the Berry-Plaintiff altercation, Mahoney and Allen's motion for summary judgment is granted.

It is undisputed that part of Hickman's job was to establish policy at Chad. (Sup. Defs.' Resp. to Pl.'s SDF ¶ 46.) Hickman, who was appointed to his position two months before the altercation, presents no evidence that he took steps to address the "culture of violence" or "code of silence" prior to the altercation. Therefore, there is a genuine issue of material fact regarding whether Hickman could be liable under Plaintiff's Fourth Amendment section 1983 claim. But Hickman argues he is qualifiedly immune from exposure to liability on Plaintiff's Fourth Amendment section 1983 claim. (Sup. Defs.' Mot. at 12.) Plaintiff counters since the "law was clearly established that the use of excessive force violates the [F]ourth [A]mendment,"

Hickman is not entitled to qualified immunity.  (Pl.'s Sup. Opp'n at 12.)

"[T]he relevant, dispositive inquiry in determining whether [Plaintiff's Fourth Amendment] right [was] clearly established is whether it would be clear to a reasonable officer that [Hickman's] conduct was unlawful in the situation he confronted."  <u>Walker v. Gomez</u>, 370 F.3d 969, 978 (9th Cir. 2004) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)).  The record does not indicate that Hickman should have known his alleged failure to combat the "culture of violence" and "code of silence," alleged to be the basis of the violation of Plaintiff's Fourth Amendment right, within two months after he assumed office was unlawful.  Therefore, Hickman is entitled to qualified immunity and is granted summary judgment on Plaintiff's Fourth Amendment section 1983 claim.

### b.  Eighth Amendment Claim

Supervisor Defendants argue Plaintiff's Eighth Amendment section 1983 claim fails because there is no causal connection between Plaintiff's alleged harm stemming from the filing of false criminal charges against him and the Supervisor Defendants' actions.  (Sup. Defs.' Mot. at 10.)  Plaintiff's counsel specified at oral argument that Plaintiff's Eighth Amendment claim is based on the allegation Mahoney falsely pressed charges against Plaintiff because of Plaintiff's failure to sign the Contract.  Further, Plaintiff's counsel stated the harm Plaintiff suffered was that Plaintiff was incarcerated at the county jail for 13 days and was required to pay a $25 fee to the court when the charges against him were filed.  Defendants responded that Plaintiff has no evidence he paid a $25 fee and Plaintiff was transferred to the county jail for his own safety.

Plaintiff also argue that the Supervisor Defendants are liable because they "were deliberately indifferent to [his] rights . . . by failing to remedy the known custom and practice of . . . cover ups." (Pl.'s Sup. Opp'n at 12.)

Plaintiff submits no evidence that he was transferred to the county jail or paid a $25 fee as a result of the false reports being filed.  In addition, each of the Supervisor Defendants held their position no longer than four months before the Berry-Plaintiff altercation occurred.  (Sup. Defs.' SUF ¶¶ 9, 16, 19.)  Therefore, whether these Defendants could have remedied the alleged "code of silence" within that time period is a disputed factual issue.  But the Supervisor Defendants assert they are qualifiedly immune from liability on this claim because it was not clearly established that their actions surrounding the Berry-Plaintiff altercation violated Plaintiff's Eighth Amendment rights.  (Sup. Defs.' Mot. at 11-12.)

Plaintiff has not shown that Supervisor Defendants should have known the alleged failure to combat the "code of silence" within the time period after each of them assumed office was unlawful. Therefore, the Supervisor Defendants are entitled to qualified immunity and are granted summary judgment on Plaintiff's Eighth Amendment section 1983 claim.

### c.  Fourteenth Amendment

Plaintiff's counsel conceded at oral argument that there was no precedent supporting his Fourteenth Amendment section 1983 claim which is based on Supervisor Defendants' failure to provide Plaintiff with an attorney who would have counseled Plaintiff as to whether he should sign the Contract.  Therefore, Supervisor Defendants' motion

for summary judgment is granted on Plaintiff's Fourteenth Amendment section 1983 claim.

### vii.  California Civil Code Section 52.1

Supervisor Defendants assert they are entitled to summary judgment on Plaintiff's California Civil Code section 52.1 ("section 52.1") claim because there was no policy or practice of coercing wards into signing the Contract. (Sup. Defs.' Mot. at 12.)  Plaintiff rejoins Mahoney is not entitled to summary judgment because he required all wards to sign the Contract. (Pl.'s Sup. Opp'n at 12.)

Section 52.1 proscribes "interfere[nce] by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."

Mahoney admits that "wards who refused to come out and meet with staff and sign the contract remained on lockdown status." (Pl.'s RSSUF ¶ 1.)  Whether this policy amounted to interference with Plaintiff's constitutional rights by coercion is a question of fact that cannot be determined on a motion for summary judgment. Therefore, Mahoney's motion for summary judgment on Plaintiff's section 52.1 claim is denied.

### viii.  Negligence Per Se

Supervisor Defendants also seek summary judgment on Plaintiff's negligence per se claim. (Sup. Defs.' Mot. at 13.) Plaintiff does not respond.  This claim is based on alleged violations of California Code of Regulations title 15, division 4, sections 4039 and 4040. (Compl. ¶¶ 36-39.)  Section 4040 has been repealed.

Section 4039 states an "employee shall not use physical force in any form as a disciplinary technique to direct or control a ward, except to restrain him." Plaintiff submits no evidence that Supervisor Defendants used physical force against Plaintiff on the day of the incident. Therefore, Supervisor Defendants' motion for summary judgment on Plaintiff's negligence per se claim is granted.

<u>ix.  California Government Code Section 845.6</u>

Mahoney seeks summary judgment on Plaintiff's claim under California Government Code section 845.6 ("section 845.6"), contending there was nothing to indicate that he needed to personally summon immediate medical care to the scene of the incident. (Sup. Defs.' Mot. at 13-14.) Plaintiff responds Mahoney is liable because he saw a cloud of mace when he approached the scene and failed to summon medical care. (Pl.'s Sup. Opp'n at 13.)

Section 845.6 states:

> [A] public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody . . . if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Nothing in this section indicates what level of medical care should be provided.

Plaintiff concedes it is the duty of medical technician assistants ("MTAs") to provide medical care for wards at CYA facilities. (Pl.'s Resp. to Mov. Defs.' SUF ("Pl.'s RMSUF") ¶ 39.) Plaintiff's counsel also conceded at oral argument that an MTA was within 10 feet of Plaintiff at the scene of the incident. Plaintiff argued this was not sufficient to relieve Mahoney of liability because the MTA did not treat Plaintiff in a satisfactory manner. However,

statutory liability is based not on the quality of medical care provided, but on summoning medical care when it is needed.  Since Plaintiff has presented no evidence that Mahoney had reason to know additional medical care needed to be summoned, Mahoney's motion for summary judgment on Plaintiff's section 845.6 claim is granted.

### C.  Moving Defendants

#### i.  Assault & Battery

Moving Defendants seek summary judgment on Plaintiff's assault and battery claim, arguing they cannot be liable because none of them touched Plaintiff or caused Plaintiff to be touched, and there is no evidence showing they intended to cause Plaintiff harm or threatened physical contact with Plaintiff.  (Moving Defs.' Mot. for Summ. J. ("Mov. Defs.' Mot.") at 9.)  Plaintiff rejoins Moving Defendants are liable for assault and battery because they were involved in a conspiracy with Berry who committed the assault and battery.  (Pl.'s Opp'n to Moving Defs.' Mot. ("Pl.'s Mov. Opp'n") at 7.)  Moving Defendants also contend Plaintiff's conspiracy claim fails because they did not know about the assault before it happened.  (Mov. Defs.' Mot. at 11-12.)

To prove a civil conspiracy Plaintiff must show:

> [T]hat each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it.  It is not enough that the conspiring officers knew of an intended wrongful act, they must agree-expressly or tacitly-to achieve it. Unless there is such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy.

Choate v. County of Orange, 86 Cal. App. 4th 312, 333 (2001) (internal citation and quotation marks omitted).

Plaintiff concedes Moving Defendants had no advance notice of the incident, and has produced no evidence from which a reasonable inference could be drawn that the Moving Defendants agreed - expressly or tacitly - to assault or batter Plaintiff. (Pl.'s RMSUF ¶ 10.) Since Plaintiff has neither shown that Moving Defendants engaged directly in committing an assault or battery against him, nor that Moving Defendants were involved in a conspiracy to commit assault and battery, Moving Defendants' motion for summary judgment is granted on Plaintiff's assault and battery claim and conspiracy to commit an assault and battery claim.

### ii.  Negligent Supervision, Hiring, Training

Moving Defendants also seek summary judgment on Plaintiff's negligent supervision, hiring, and training claim, arguing it is applicable only to employers, and since none of the Moving Defendants are employers they are not subject to liability for this claim. (Mov. Defs.' Mot. at 10.)  Plaintiff rejoins that both Brown and Bridges have supervisory duties because they are both SYCCs and therefore, had a duty to intervene in the altercation between Berry and Plaintiff. (Pl.'s Mov. Opp'n at 8.)

Supervisors possessing supervisory duties can be liable under a theory of negligent supervision even when they are not employers "if injury is inflicted upon [P]laintiff as a result of a breach of the supervisor's duty to train, supervise, or control the actions of subordinates." Hahn v. McLey, 737 F.2d 771, 773 (8th Cir. 1984). SYCCs have supervisory duties. (Pl.'s RMSUF ¶ 1.)  Both Brown and Bridges were present during at least part of Plaintiff's altercation with Berry. (Id. ¶¶ 6, 7.)  Whether Brown and Bridges, as supervisors, could have intervened in the altercation to prevent

Plaintiff's injuries is a question of fact that cannot be decided on a motion for summary judgment.  Since Brown and Bridges had supervisory duties, their motion is denied.  Plaintiff presents no evidence that Dutra or Torres had supervisory duties; therefore, their motion is granted.

### iii.  Fraud by Concealment

Moving Defendants contend Plaintiff's fraud claim fails because no fraud was perpetrated against Plaintiff.  (Mov. Defs.' Mot. at 11.)  Plaintiff rejoins he has satisfied the elements of fraud by showing that false reports were given to the District Attorney, while the exculpatory videotape was withheld.  (Pl.'s Mov. Opp'n at 9.)  But since Plaintiff has presented no evidence that Moving Defendants concealed information from Plaintiff, and he fails to support his argument that concealment of a material fact from a third party - here, the District Attorney - constitutes a viable fraud claim under California law, Moving Defendants' motion is granted.

### iv.  Conspiracy to Cover Up

Moving Defendants seek summary judgment on Plaintiff's claim that they engaged in a conspiracy to cover up the incident.  (Mov. Defs.' Mot. at 11-12.)  Moving Defendants assert there is no evidence of a common plan or design to cover up the incident, and that Plaintiff suffered no harm as a result of the false reports that were filed.  (Mov. Defs.' Mot. at 12.)  Plaintiff rejoins that the falsification of the reports supports the inference of a conspiracy and therefore, Moving Defendants are liable for Berry's use of force against Plaintiff.  (Pl.'s Mov. Opp'n at 7-8.)

Based on the false reports filed by each of the Moving Defendants a reasonable inference could be drawn that there was a

tacit agreement to protect one another.  Therefore, Moving Defendants'
motion for summary judgment on Plaintiff's claim of a conspiracy to
cover up is denied.

### v.  Claim Under 42 U.S.C. § 1983 for Constitutional and Civil Rights Violations

Moving Defendants also seek summary judgment on Plaintiff's
section 1983 claim for violations of Plaintiff's Fourth, Eighth, and
Fourteenth Amendment rights.  Plaintiff's counsel specified at oral
argument that all of these claims asserted against the Moving
Defendants are based on the alleged conspiracy to cover up by filing
false reports with the District Attorney.  Since the record lacks
evidence showing a causal connection between Plaintiff's alleged harm
and the false reports, Moving Defendants' motion is granted on
Plaintiff's section 1983 claim alleging these constitutional
violations.

### vi.  California Civil Code Section 52.1

Moving Defendants seek summary judgment of Plaintiff's claim
under section 52.1, arguing that this claim must fail because there is
no evidence Moving Defendants threatened or committed violent acts
against Plaintiff.  (Mov. Defs.' Mot. at 14.)  Plaintiff counters that
Brown attempted to coerce and intimidate Plaintiff into signing the
Contract.  (Pl.'s Mov. Opp'n at 13.)

Plaintiff presents evidence Brown told Plaintiff "You will
sign the contract.  You have to sign the contract."  (Pl.'s RMSUF ¶
2.)  Whether this amounted to interference with Plaintiff's
constitutional rights by coercion or intimidation is a question of
fact that cannot be decided on a motion for summary judgment.
Therefore, Brown's motion for summary judgment on Plaintiff's section

52.1 claim is denied.  Plaintiff presents no evidence that Bridges,
Dutra, or Torres coerced or intimidated him.  Therefore, the motion of
Bridges, Dutra, and Torres is granted.

### vii.  Negligence Per Se

Moving Defendants contend Plaintiff's negligence per se
claim based on California Code of Regulations title 15, division 4,
section 4039 fails because there is no evidence they used force
against Plaintiff.  (Mov. Defs.' Mot. at 15.)  Plaintiff does not
respond to this argument.  It is undisputed that the Moving Defendants
did not have any physical contact with Plaintiff on the day of the
incident.  (RMSUF ¶¶ 9, 11, 19, 30, 36.)  Therefore, Moving
Defendants' motion is granted.

### viii.  California Government Code Section 845.6

Moving Defendants assert that they are not liable under
California Government Code section 845.6 because Plaintiff was treated
by an MTA at the scene.  (Mov. Defs.' Mot. at 16.)  Plaintiff contends
Moving Defendants were aware Plaintiff needed medical care and did not
summon medical care.  (Pl.'s Mov. Opp'n at 12.)  Plaintiff conceded at
oral argument that it is the duty of an MTA to provide medical care
for wards and that an MTA was within 10 feet of him at the scene of
the incident.  Since Plaintiff has presented no evidence that Moving
Defendants had reason to know additional medical care needed to be
summoned, Moving Defendants' motion is granted.

### ix.  California Civil Code Section 51.7

Moving Defendants also seek summary judgment on Plaintiff's
claim under California Civil Code section 51.7.  This section
proscribes violence and threats of violence based on "political
affiliation, or on account of [sex, race, color, religion, ancestry,

national origin, disability, medical condition, marital status, or sexual orientation].”  Moving Defendants argue this claim fails since Plaintiff has not shown that he has any of the protected characteristics.  (Mov. Defs.’ Mot. at 17.)  Plaintiff does not respond to this argument.  Since Plaintiff has shown neither that he has any of the protected characteristics, nor that the altercation was motivated because Moving Defendants perceived him as having any of these characteristics, Moving Defendants’ motion is granted.

<u>CONCLUSION</u>

Since Plaintiff has not shown that his motion to strike expert witness testimony is ripe for decision, this motion is denied.

The Supervisor Defendants’ motion for summary judgment is granted except on Plaintiff’s claims of: (1) negligent supervision under California law asserted against Hickman, (2) negligent training under California law asserted against Allen, (3) conspiracy to cover up asserted against Mahoney, and (4) coercion under section 52.1 asserted against Mahoney.  Moving Defendants’ motion for summary judgment is granted except on Plaintiff’s claims of: (1) negligent supervision asserted against Bridges and Brown, (2) coercion under section 52.1 asserted against Brown, and (3) conspiracy to cover up claim asserted against each of the Moving Defendants.

IT IS SO ORDERED.

Dated:  February 12, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge